2GIN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

GREGORIO ROMAN-PORTALATIN,

Petitioner

v.

UNITED STATES OF AMERICA,

Respondent

CIVIL 12-1687 (DRD)
(CRIMINAL 09-0351(DRD))

MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

I.  FACTUAL AND PROCEDURAL BACKGROUND

On October 21, 2009, petitioner Gregorio Roman-Portalatin was charged in a three-count indictment with sexual exploitation of a child.  Count One charged petitioner in that he did use a facility and means of interstate or foreign commerce to knowingly persuade, induce, entice and/or coerce an individual under the age of eighteen, that is, a fifteen year old female, to engage in sexual activity for which he could be charged with a criminal offense, to wit, engaging in sexual penetration with a person less than sixteen years of age, committing lascivious acts against a person less than sixteen years of age, and/or employing, using, persuading, inducing, enticing, and/or coercing a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct, for which the defendant could be charged with a criminal offense in Puerto Rico.  All in violation of Title 18  United States Code, Section 2422(b).   (Crim. No. 09-

CIVIL 12-1687 (DRD)                    2
(CRIMINAL 09-0351 (DRD))

351 (DRD), Docket No. 3.)     Count Two charged petitioner with knowingly employing, using, persuading, inducing, enticing, and/or coercing a female minor who was fifteen (15) years old to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct, that is, still and video images using a web cam and computer which had been mailed, shipped or transported in interstate commerce.  All in violation of Title 18  United States Code, Section 2251(a).   Count Three charged him with possessing one or more matters which contained visual depictions of a minor engaging in sexually explicit conduct, and such visual depictions had been mailed, shipped and transported using any means or facility of interstate and foreign commerce or in or affecting interstate or foreign commerce, or was produced using materials which had been mailed and so shipped and transported, by any means including by computer, and the producing of such visual depictions involved the use of a minor engaging in sexually explicit conduct and were of such conduct, that is: Gregorio Roman Portalatin, knowingly possessed in his computer visual images of actual minors engaging in sexually explicit conduct, as defined in Title 18 United States Code Section 2256(2).   All in violation of Title 18  United States Code, Section 2252(a)(4)(B).  The indictment also contained a forfeiture allegation. (Crim. No. 09-351 (DRD), Docket No. 3).

CIVIL 12-1687 (DRD)                        3
(CRIMINAL 09-0351 (DRD))

At the time of his arrest, petitioner worked as a librarian for the Puerto Rico Department of Education. (Crim. No. 09-351 (DRD), Docket No. 6).  (Later he is also described as a biology teacher.)   He possesses an  M.A. in Library Sciences. (Crim. No. 09-351 (DRD), Docket No. 66 at 3-4.)   Petitioner entered a not guilty plea to the charges on November 16, 2009.  (Crim. No. 09-351 (DRD), Docket No. 14).   In the detention order signed on that day, the United States magistrate judge found by clear and convincing evidence that petitioner was a danger to the community, making reference to petitioner's mental history as a basis for his detention, as well as a prior conviction for battery and the nature of the offenses charged.  (Crim. No. 09-351 (DRD), Docket No. 15)[1].  Six months later,  on May 6 and 21, 2010, petitioner filed two motions to change his plea to guilty. (Crim. No. 09-351 (DRD), Docket Nos. 34, 40).

On May 24, 2010, petitioner entered a plea of guilty to counts one and three of the indictment as a result of a plea agreement which he signed and all the pages of which he initialed. (Crim. No. 09-351 (DRD), Docket No. 43).  Also on that date, the court informed the Metropolitan Detention Facility (MDC) that petitioner had complained that the medication he was being administered there

---

[1]The sentencing memorandum filed by petitioner refers to a report of Bernardo B. Muniz Ramirez who had found petitioner incompetent to continue with the legal proceedings due to his emotional state, this shortly after local charges were filed against petitioner. (Crim. No. 09-351 (DRD), Docket No. 66 at 6).

CIVIL 12-1687 (DRD)                    4
(CRIMINAL 09-0351 (DRD))

was causing him loss of memory, dizziness, incontinence and involuntary muscle contractions.  (Crim. No. 09-351 (DRD), Docket No. 45)

On July 15, 2010, petitioner moved *ex parte* for the court to facilitate his being evaluated by two mental health professionals, Dr. Jose Mendez-Villarubia and Dr. Luis Collazo. (Crim. No. 09-351 (DRD), Docket No. 50).  While at MDC, petitioner was placed on suicide watch on at least one occasion.  (Crim. No. 09-351 (DRD), Docket No. 66 at 7).

The Pre-Sentence Report was notified to counsel on December 6, 2010. (Crim. No. 09-351 DRD, Docket No. 61).  Petitioner filed a sentencing memorandum on February 14, 2011. (Crim. No. 09-351 (DRD), Docket No. 66). An amended Pre-Sentence Report was notified to counsel on February 16, 2011. (Crim. No. 09-351 DRD, Docket No. 67)   While petitioner's severe or major depression was mentioned in the mental health evaluations, the doctors that had evaluated petitioner had concluded that he was competent to continue with the proceedings. (Crim. No. 09-351 (DRD), Docket No. 66 at 7).

Petitioner was sentenced on April 7, 2011 to 145 months imprisonment as to Count One, and 120 months imprisonment as to Count Three, to be served concurrently with each other.  Concurrent supervised release terms of ten years were also imposed. (Crim. No. 09-351 (DRD), Docket No. 75).   The court used the November 1, 2010 edition of the United States Sentencing Guidelines to apply

CIVIL 12-1687 (DRD)                          5
(CRIMINAL 09-0351 (DRD))

the advisory guideline adjustments pursuant to U.S.S.G. § 1B1.11(a).  (Crim. No. 09-351 (DRD), Docket No. 82 at 26). The court grouped the offenses together under U.S.S.G. § 3D1.2(b) because of the closely related counts.  Pursuant to U.S.S.G. §§ 2G1.3(c)(1) and 2G2.2(c), there was a cross reference to U.S.S.G. § 2G2.1(a), because the offense involved causing a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct. (Crim. No. 09-351 (DRD), Docket No. 82 at 27).  Thus a base offense level of 32 was applied.    A  two  level  increase  was  warranted  under  U.S.S.G.  § 2G2.1(b)(1)(B) because the offense involved a minor who had not attained the age of 16.   A two level enhancement was applied pursuant to U.S.S.G. § 2G2.1(b)(2)(A) because of the production of sexually explicit material or for the purpose of transmitting such sexually explicit material live. (Crim. No. 09-351 (DRD), Docket No. 82 at 27).   The court noted the involvement of a computer to solicit participation with a minor in sexually explicit conduct pursuant to U.S.S.G. § 2G2.1(b)(6)(B)(ii), and thus a two level increase was deemed warranted.[2] Because of the acceptance of responsibility under U.S.S.G. § 3E1.1(a), a three

_____

[2]The plea agreement contemplated a base offense level of 32 and a total offense level of 33 with a sentencing range of 135-168 months.  The special offense characteristic related to the computer was excluded.  Thus the two-point enhancement under  U.S.S.G. § 2G2.1(b)(6)(B)(ii), which was calculated by the U.S. Probation Officer, was not contemplated by the parties at the time of the plea.

CIVIL 12-1687 (DRD)                6
(CRIMINAL 09-0351 (DRD))

level reduction inn the base offense level was applied.   Based on a total offense level of 35, and a criminal history category of I, the guideline range provided was from 168 to 210 months.  (Crim. No. 09-351 (DRD), Docket No. 82 at 28).   The court then announced it would not produce a guideline sentence but was going to use the factors of 18 U.S.C. § 3553, primarily because of petitioner's major depressive disorder, severe, but without psychosis, and other factors in 18 U.S.C. § 3553. (Crim. No. 09-351, Docket No. 82 at 29).  Some of the factors weighed included petitioner's predatory behavior including careful and well structured planning, including having sexual relations with the minor in the library, his having been successfully employed at MDC during pretrial detention, his losing his job permanently, and his violating the trust of his family.

A timely notice of appeal was filed. (Crim. No. 09-351 (DRD), Docket No. 77).   On appeal, petitioner argued that the sentencing court erred in applying a two level enhancement for the use of a computer to solicit participation with a minor in sexually explicit conduct, that is,  U.S.S.G. § 2G2.1(b)(6)(B)(ii).  He also claimed that he suffered ineffective assistance of counsel since his attorney did not make a timely objection to the two level enhancement.  (Docket No. 1 at 2).

On April 26, 2012, in an unpublished opinion, the court of appeals affirmed the conviction. United States v. Roman-Portalatin, 476 Fed. Appx. 868, 2012 WL

CIVIL 12-1687 (DRD)                    7
(CRIMINAL 09-0351 (DRD))

1418504 (April 26, 2012)(unpublished opinion).  (Crim. No. 09-351-DRD), Docket No. 84).

The court of appeals focused in part on the differences in the application of U.S.S.G. § 2G2.1 (b)  (6) (B) (ii)[3] (use of a computer to solicit participation with a minor in sexually explicit conduct) and U.S.S.G. § 2G2.1 (b)  (6) (B) (I) (use of a computer to persuade, induce, entice, coerce, or facilitate the travel of a minor to engage in sexually explicit conduct, or to otherwise solicit participation by a minor in such conduct).  In a nutshell, the court concluded that the difference was one of form over substance. While the possible application of the wrong Sentencing Guideline might provide for a higher sentencing range, the sentencing court departed downward based on sentencing considerations of 18 U.S.C. § 3553 (a).  At sentencing, when asked about the application of U.S.S.G. § 2G2.1 (b) (6) (B) (ii), the court noted that it had not applied the provision when it  imposed the sentence below the 168-210 range.  In any event, both guidelines provide for the same sentencing enhancement and the court of appeals did not have to decide the issue directly, although it was considered with less portent than is attributed

_____

[3]The government accepted petitioner's position that this provision applies only to communications with third parties, not with a victim, see United States v. Jass, 569 F.3d 47, 66-68 (2d Cir. 2009), a position that the appellate court, in its own words,  found  it had no occasion to pass upon.

CIVIL 12-1687 (DRD)                    8
(CRIMINAL 09-0351 (DRD))

by petitioner.[4]    Indeed, the court of appeals noted, "Prejudice is ordinarily a necessary condition for any order for sentencing, . . ., and the defendant loses no matter which standard of error correction we might apply."   United States v. Roman-Portalatin, 2012 WL 1418504 at2.   The court also gave no portent to the argument that using a high guideline range as a starting point might have had an effect on the court's mental process which operated to the detriment of petitioner in terms of a higher sentence.

Petitioner did not file a petition for a writ of certiorari.

II.  28 U.S.C. § 2255

This  matter is before the court on motion filed by petitioner on August 21, 2012 to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255. (Docket No. 1).    A supplemental memorandum in support of the motion was filed on September 10, 2012. (Docket No. 3).   The government filed a response in opposition to the motion on October 18, 2012.  (Docket No. 9).   A reply to the response was filed by petitioner on November 20, 2012. (Docket No. 15).

_____

    [4]U.S.S.G. § 2G2.1(b)(6)(B)(i) provides the same sentence enhancement for using a computer to induce the victim to engage in sexually explicit conduct with intent to produce related material or transmit it live, as U.S.S.G. § 2G2.1(b)(6)(B)(ii) provides when the communication is with a third party. See United States v. Roman-Portalatin, 2012 WL 1418504.

CIVIL 12-1687 (DRD)                              9
(CRIMINAL 09-0351 (DRD))

Having considered the arguments of the parties and for the reasons set forth below, I recommend that the petitioner's motion to vacate sentence be DENIED.

Petitioner argues in his motion that the district court erred in applying a two level enhancement for the use of a computer to solicit participation with a minor in sexually explicit conduct under U.S.S.G. § 2G2.1(b)(6)(B)(ii), and that counsel rendered ineffective assistance of counsel in failing to object to the two level enhancement. (Docket No. 1 at 2). He also argues that his guilty plea was not knowing and voluntary in violation of the Due Process Clause of the U.S. Constitution. He alleges that he suffered from psychological diagnoses which conclusively show that he was not competent to enter a guilty plea to the offenses at issue. This includes, but is not necessarily limited to, severe depression. (Docket No. 1 at 4). He also argues that he was found incompetent during the initial phases of the case. Petitioner argues that his memory has faded as to those things which he is raising at present. He also notes that there may be other issues that he is still unaware of that are present in the case but that he is operating under the severe handicap of mental disease where he completely forgets what may have occurred minutes ago. (Docket No. 3 at 1). He does not

CIVIL 12-1687 (DRD)                    10
(CRIMINAL 09-0351 (DRD))

request an evidentiary hearing as such[5] but rather seeks that the conviction and sentence be vacated, with proper legal proceedings to follow subsequently (Docket No. 1 at 8)  to determine if defense counsel was inadequate under the Sixth Amendment for failing to object to the enhancement made pursuant to U.S.S.G. § 3B1.1(a)  (Docket No. 3 at 7).  Petitioner also objects to certain parts of the presentence report relating to the victim's father's depression and its causation, as well as entering into a comprehensive exculpatory analysis of the evidence vis-a-vis the use of a computer. (Docket No. 3 at 4).

On October 18, 2012,  the government filed a response in opposition to the petitioner's memorandum.    It relates some details of the exchange between petitioner and the court at the change of plea hearing, noting the court's inquiry, and petitioner's responses as to his mental state.[6]  (Docket No. 9 at 3-5). Defense counsel also informed the court that he had no doubt as to petitioner's competency, notwithstanding anxiety and nervousness.  (Docket No. 9 at 15). The government notes the failure of petitioner to show that his attorney's representation was ineffective, pointing to specific conduct of defense counsel,

---

[5]In his subsequent memorandum, petitioner argues that a minimum, the court must calendar an evidentiary hearing on the competency issue (as required by First Circuit case law). (Docket No. 15 at 8).

[6]Assistant Federal Public Defender Victor Gonzalez-Bothwell represented petitioner at the change of plea hearing.

CIVIL 12-1687 (DRD)                    11
(CRIMINAL 09-0351 (DRD))

including counsel's arguing against the two level enhancement which was deemed error by the government but not decided by the court of appeals, and not resulting in prejudice to petitioner.  The government also notes that petitioner rehashes the same argument that he presented at the court of appeals in relation to the application of U.S.S.G. § 2G2.1(b)(6)(B)(ii).  This includes the attack on defense counsel's representation which the appellate court entertained and discarded with the flick of the nib almost as a post script, noting that the most counsel could have done was successfully arguing changing the (ii) to (I) in a corrected presentence report.  The government notes that on appeal, petitioner failed to seek the withdrawal of his guilty plea, claiming mental incompetence.

        In the reply brief, petitioner argues that it is too simple to rely on his own statements during the plea colloquy to determine his mental competency, and that there are numerous and sufficient justifications in the record that support his claim in incompetency. (Docket No. 15 at 2).  He goes through the pharmacopoeia of the medications he was taking and emphasizes the lack of discussion of side effects of these medications, noting the obvious mental health issues that such medications are evidence of.  He notes that the better practice would have been for the court to inquire into his capacity to enter the guilty plea and ask about the side effects, relying on United States v. Parra-Ibanez, 936 F.2d 588, 595-96 (1st Cir. 1991) to stress that the judge should have asked further questions.

CIVIL 12-1687 (DRD)                    12
(CRIMINAL 09-0351 (DRD))

Petitioner again argues error in the court's application of the two level enhancement and again provides a detailed exculpatory proffer related to the use or lack thereof of the computer, and the failure of defense counsel to have investigated the issue further. While noting that the sentencing was based upon the factors of 18 U.S.C. § 3553, petitioner argues that there had to be a starting point to the sentence, which point was erroneously high based upon the enhancement.

Petitioner concludes the reply memorandum that the actions of his defense counsel show she was clearly acting in prosecutor mode. Thus with two prosecutors acting in concert with each other in a case where he was incompetent, the proceedings amounted to a mockery of justice. (Docket No. 15 at 8).

III.  LEGAL STANDARDS

Under 28 U.S.C. § 2255, a federal prisoner may move for post conviction relief if:

> the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack . . . .

28 U.S.C. § 2255(a); Hill v. United States, 368 U.S. 424, 426-27 n.3 (1962); David v. United States, 134 F.3d 470, 474 (1st Cir. 1998). The burden is on the petitioner to show his or her entitlement to relief under section 2255, David v.

CIVIL 12-1687 (DRD)                    13
(CRIMINAL 09-0351 (DRD))

United States, 134 F.3d at 474, including his or her entitlement to an evidentiary

hearing.  Cody v. United States, 249 F.3d 47, 54 (1st Cir. 2001) (quoting United

States v. McGill, 11 F.3d 223, 225 (1st Cir. 1993)).

Petitioner has ultimately sought an evidentiary hearing.   Nevertheless, it

has been held that an evidentiary hearing is not necessary if the 2255 motion is

inadequate on its face or if, even though facially adequate, "is conclusively refuted

as to the alleged facts by the files and records of the case."  United States v.

McGill, 11 F.3d at 226 (quoting Moran v. Hogan, 494 F.2d 1220, 1222 (1st Cir.

1974)).  "In other words, a '§ 2255 motion may be denied without a hearing as

to those allegations which, if accepted as true, entitle the movant to no relief, or

which need not be accepted as true because they state conclusions instead of

facts, contradict the record, or are 'inherently incredible.'" United States v. McGill,

11 F.3d at 226 (quoting Shraiar v. United States, 736 F.2d 817, 818 (1st Cir.

1984)); Torres-Santiago v. United States, 865 F. Supp. 2d 168, 184 (D.P.R.

2012); De-La-Cruz v. United States, 865 F. Supp. 2d 156, 165 (D.P.R. 2012).

A. INEFFECTIVE ASSISTANCE OF COUNSEL

"In all criminal prosecutions, the accused shall enjoy the right to . . . the

Assistance of Counsel for his defence."  U.S. Const. amend. 6.  To establish a

claim of ineffective assistance of counsel, a petitioner "must show that counsel's

performance was deficient," and that the deficiency prejudiced the petitioner.

CIVIL 12-1687 (DRD)                    14
(CRIMINAL 09-0351 (DRD))

Strickland v. Washington, 466 U.S. 668, 687 (1984). "This inquiry involves a two-part test." Rosado v. Allen, 482 F. Supp. 2d 94, 101 (D. Mass. 2007). "First, a defendant must show that, 'in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance.'" Id. (quoting Strickland v. Washington, 466 U.S. at 690.) "This evaluation of counsel's performance 'demands a fairly tolerant approach.'" Rosado v. Allen, 482 F. Supp. 2d at 101 (quoting Scarpa v. DuBois, 38 F.3d 1, 8 (1st Cir. 1994)). "The court must apply the performance standard 'not in hindsight, but based on what the lawyer knew, or should have known, at the time his tactical choices were made and implemented.'" Rosado v. Allen, 482 F. Supp. 2d at 101 (quoting United States v. Natanel, 938 F.2d 302, 309 (1st Cir. 1991)). The test includes a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Smullen v. United States, 94 F.3d 20, 23 (1st Cir. 1996) (quoting Strickland v. Washington, 466 U.S. at 689). "Second, a defendant must establish that prejudice resulted 'in consequence of counsel's blunders,' which entails 'a showing of a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."'" Rosado v. Allen, 482 F. Supp. 2d at 101 (quoting Scarpa v. DuBois, 38 F.3d at 8) (quoting Strickland v. Washington, 466 U.S. at 694); see Padilla v. Kentucky, 130 S. Ct. 1473, 1482 (2010) (quoting Strickland v. Washington, 466

CIVIL 12-1687 (DRD)                    15
(CRIMINAL 09-0351 (DRD))

U.S. at 688): <u>Argencourt v. United States</u>, 78 F.3d 14, 16 (1st Cir. 1996);  <u>Mattei-Albizu v. United States</u>, 699 F. Supp. 2d 404, 407 (D.P.R. 2010).  However, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment."  <u>Argencourt v. United States</u>, 78 F.3d at 16 (quoting <u>Strickland v. Washington</u>, 466 U.S. at 691).  Thus, "[c]ounsel's actions are to be judged 'in light of the whole record, including the facts of the case, the trial transcript, the exhibits, and the applicable substantive law.'"  <u>Rosado v. Allen</u>, 482 F. Supp. 2d at 101 (quoting <u>Scarpa v. DuBois</u>, 38 F.3d at 15).  The defendant bears the burden of proof for both elements of the test.  <u>Cirilo-Muñoz v. United States</u>, 404 F.3d 527, 530 (1st Cir. 2005), <u>cert. denied</u>, 525 U.S. 942 (2010),  (citing <u>Scarpa v. DuBois</u>, 38 F.3d at 8-9)<u>.</u>

        In <u>Hill v. Lockhart</u> the Supreme Court applied <u>Strickland</u>'s  two-part test to ineffective assistance of counsel claims in the guilty plea context.  <u>Hill v. Lockhart</u>, 474 U.S. 52, 58 (1985) ("We hold, therefore, that the two-part <u>Strickland v. Washington</u> test applies to challenges to guilty pleas based on ineffective assistance of counsel.").  As the <u>Hill</u> Court explained, "[i]n the context of guilty pleas, the first half of the <u>Strickland v. Washington</u> test is nothing more than a restatement of the standard of attorney competence already set forth in [other cases].  The second, or 'prejudice,' requirement, on the other hand, focuses on

CIVIL 12-1687 (DRD)                    16
(CRIMINAL 09-0351 (DRD))


whether counsel's constitutionally ineffective performance affected the outcome

of the plea process."  Hill v. Lockhart, 474 U.S. at 58-59.  Accordingly, petitioner

would have to show that there is "a reasonable probability that, but for counsel's

errors, he would not have pleaded guilty and would have insisted on going to

trial."  Id. at 59.

        At the plea hearing held on July 29, 2009, petitioner was placed under oath.

 (Crim. No. 09-351 (DRD), Docket No. 81 (plea transcript) at 2).    The judge

asked petitioner about the details of his educational and work experience and the

petitioner related both to the judge.  (Crim. No. 09-351 (DRD), Docket No. 81 at

4-5).   The judge asked if petitioner had been under the care of a physician or

psychiatrist recently and petitioner explained that when he was not in custody ("in

the street"), he had been attended to by two psychiatrists. (Crim. No. 09-351

(DRD), Docket No. 81 at 5).   He had not been hospitalized.[7]  When asked about

medication he was taking as to a psychiatric condition, petitioner explained:

        "Some of the medication that I have been prescribed here in
        Court here - - I am sorry here at MDC, there is substitutes of what I

---

        [7]Petitioner was originally charged at Utuado Superior Court on June 16,
2009.  (Crim. 09-351, Docket No. 67 at 17).  Petitioner underwent treatment for
chronic depression with two psychiatrists, Dr. Rivera-Carrion and Dr. Bernardo
Rodriguez beginning in April 2009. He had several suicide attempts and took the
following medication: Trazodone, 100 mg.; Terazosin, 2mg., Clonazepam 2 mg.;
Propranolol 10 mg., Ramipril 10 mg., and Omepranole DR 20 mg.  (Crim. 09-351,
Docket No. 67 at 21).  On November 9, 2009, it was decided by a mental health
professional at MDC to put petitioner on suicide watch there.

CIVIL 12-1687 (DRD)                         17
(CRIMINAL 09-0351 (DRD))

> was taking when I was out there in the street.  They have caused dizziness. Continuous diarrhea, incontinency.  And it sort of has affected my memory.  I might do something in the morning and, for example, hours later, at six or seven hours later I have to ask if the medication was administered to me or not.  But at the present time I am aware of everything that is going on."

(Crim. No. 09-351-(DRD), Docket No. 81 at 6).

Petitioner was asked if he was sure (that he was aware of everything that was going on) and he said "Yes, Your Honor."  (Crim. No. 09-351-(DRD), Docket No. 81 at 6).  The court noted the following:

> "To me, you look like, up to now, that you are alert.  You are answering the questions that I am asking you.  They are not, 'yes' or 'no' answers.  They are answers that require your mind to understand the question and then to proceed to answer.  And the answer that you are producing is directly related to the question."

(Crim. No. 09-351-(DRD), Docket No. 81  at 7)

Petitioner was also asked if he was satisfied with the services of his attorney, Assistant Federal Public Defender Yasmin Irizarry, and he said "95 percent, yes." (Crim. No. 09-351 (DRD), Docket No. 81 at 10).   When asked if he was making a correct decision in pleading guilty, petitioner stated "I think so, even though the sentence could be longer than what I really expected.  But the law is the law and if I committed a mistake I have to pay for it too."  (Crim. No. 09-351 (DRD), Docket No. 81 at 11).   Petitioner also noted that he had met with his defense counsel about twelve times to discuss the case in general, nine of those times to

CIVIL 12-1687 (DRD)                    18
(CRIMINAL 09-0351 (DRD))

discuss the potential consequences of pleading guilty.  (Crim. No. 09-351 (DRD),

Docket No. 81 at 11-12).

The defense attorney outlined the details of the plea agreement and

petitioner had initialed each page of the agreement and signed the same.  He also

understands English, which was made clear during the plea colloquy.  (Crim. No.

09-351 (DRD), Docket No. 81 at 29).    He generally answered the judge's

questions in English but also used an interpreter.   If one reviews the transcript

of the plea colloquy, it is clear that the court addressed the traditional Rule 11

core concerns, that is, that it instructed the petitioner as to the nature of the

charges, the consequences of his pleading guilty, including the possible sentence

that petitioner would be facing, and the absence of coercion, that is, the

voluntariness of the guilty plea.  See United States v. Cotal-Crespo, 47 F.3d 1, 4

(1st Cir. 1995); Nieves-Ramos v. United States, 430 F. Supp.2d 38, 43-44 (D.P.R.

2006).

At the sentencing hearing, petitioner's counsel argued strenuously for the

court to sentence him to the agreed-to term of 135 months.  (Crim. No . 09-351

(DRD), Docket No. 82 at 4-16, 22-23).   Petitioner also spoke on his own behalf.

(Crim. No. 09-351 (DRD), Docket No. 82 at 23).  The court then made its

sentencing calculations, concluding with a total offense level of 35 and a criminal

history category of I.  This called for a sentencing range of 168 to 210 months.

CIVIL 12-1687 (DRD)                    19
(CRIMINAL 09-0351 (DRD))

(Crim. No . 09-351 (DRD), Docket No. 82 at 28).  The court then made clear that it would not produce a guideline sentence but would rather use 18 U.S.C. § 3553 for purposes of sentencing.   The reason for not using the sentencing guidelines was the reference in the presentence report to petitioner's major depressive disorder, severe, without psychosis, among other factors.   When the court sentenced petitioner to a term of imprisonment of ten months more than the plea agreement recommendation, defense counsel moved for reconsideration, arguing extensively in that regard. (Crim. No . 09-351 (DRD), Docket No. 82 at 42-43). Counsel mentioned that petitioner's mental state had improved since he had initially been found incompetent by a mental health professional during the related state proceedings.   However, he became competent but was later placed on suicide watch at MDC.   Counsel also asked the court for assistance in an untreated condition petitioner suffering resulting in numbness in his left hand.

Defense counsel's arguments went unheeded by the sentencing court, and the issue of the application of U.S.S.G. § 2G2.1(b)(6)(B)(ii) vis-a-vis  U.S.S.G. § 2G2.1(b)(6)(B)(I) was clearly considered and rejected on appeal.  I note that the substance of the matters considered  and rejected by the court of appeals must be disregarded by this court.  See United States v. Michaud, 901 F.2d 5, 6 (1st Cir. 1990); Dirring v. United States, 370 F.2d 862, 864 (1st Cir. 1967);  Vega-Colon v. United States, 463 F. Supp. 2d 146, 157 (D.P.R. 2006).  Otherwise, the court,

CIVIL 12-1687 (DRD)                    20
(CRIMINAL 09-0351 (DRD))

on collateral review,  would instead be acting as a further appellate court, an

invitation which must be rejected.

B.  MENTAL COMPETENCY

The test for mental competency is whether the defendant "has sufficient

present ability to consult with his lawyer with a reasonable degree of rational

understanding . . . [and] a rational as well as factual understanding of the

proceedings against him." Cooper v. Oklahoma, 517 U.S. 348, 354 (1996)

(quoting Dusky v. United States, 362 U.S. 402, 402 (1960)); see United States

v. Giron-Reyes, 234 F.3d 78, 80 (1st Cir. 2000);  United States v. DeJesus, 731

F. Supp. 2d 191, 194 (D.P.R. 2010).   Petitioner arguably exercised poor

judgment in committing the offenses subject of the indictment and to which he

entered a guilty plea.  He clearly suffered and suffers from major depression,

severe, as reflected in the criminal docket as well as his own memoranda on

collateral attack where he repeatedly refers to his depression and ethereal

maladies.   However, during the pendency of the case before the district court,

there was no suggestion that a mental competency examination should have been

conducted under 18 U.S.C. § 4241(a), nor did the U.S. magistrate judge nor the

sentencing judge find it necessary to order a mental competency examination *sua*

*sponte*.   Contrary to petitioner's blanket assertions, there are no numerous

indicators of mental incompetency in the actual record and certainly little to

CIVIL 12-1687 (DRD)                    21
(CRIMINAL 09-0351 (DRD))


indicate to trial counsel or appellate counsel (both experienced attorneys), the court of appeals, or the trial judge that competency was or would be an issue.[8]

A defendant may have serious mental illness while still being able to understand the proceedings and rationally assist his counsel. United States v. Widi, 684 F.3d 216, 221 (1st Cir. 2012), citing Brown v. O'Brien, 666 F.3d 818, 826-27 & n.9 (1st Cir. ), cert. denied sub nom. Brown v. Mitchell, ____U.S.____, 133 S. Ct. 32  (June 25, 2012).   A mental health professional apparently had found petitioner incompetent in relation to the state proceedings preceding the federal indictment.  After petitioner's plea of guilty but prior to sentencing, two mental health professionals examined and evaluated petitioner on his own request and did not find him incompetent, notwithstanding the presence of major depression, severe.   Competency may be a chronic condition or episodic. Improvement is not a rarity.  See e.g. United States v. Reynolds, 646 F.3d 63, 67-68 (1st Cir. 2011).  Indeed, at the time of sentencing, the court noted that petitioner, a 55-year old person, has a master's degree and two dependents, does not have a history of drug use, and his mental health issues have been present

_____

[8]The psychosexual evaluation by Dr. Jose Mendez Villarrubia dated September 14, 2010, ends with a strong recommendation that a competency evaluation be conducted to explore how the current emotional functioning might adversely affect petitioner's ability to participate in the case. (Crim. No. 09-351 (DRD), Docket No. 66-4 at 20).  Nevertheless, the end assessment in both post-plea evaluations was that petitioner was competent to continue with the proceedings. (Crim. No. 09-351 (DRD), Docket No. 66 at 7).

CIVIL 12-1687 (DRD)                    22
(CRIMINAL 09-0351 (DRD))

since the commission of the instant offense. (Crim. No. 09-351 (DRD), Docket No. 82 at 28).

A comparison of petitioner's position in this motion to vacate, and in his actions at the hearings held before the court reflect that there is no credible evidence to support the petitioner's claim that his attorney's representation fell below an objective standard of reasonableness in relation to his state of mind. There was no reasonable basis for the court to question petitioner's competency given the information before it, the demeanor of petitioner during the plea and sentencing hearings, demeanor which the court is allowed to rely on, information contained in the sentencing memorandum and in the Presentence Report of the United States Probation Officer, the contents of which report the sentencing judge was clearly familiar with.  See e.g. United States v. Gonzalez-Ramirez, 561 F.3d 22, 26-28 (1st Cir. 2009).

> A court must order a competency hearing on motion from either the defense or the government, or *sua sponte*, 'if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense.' 18 U.S.C. §4241.
>
> United States v. Ahrendt, 560 F.3d 69, 74 (1st Cir. 2009).

However, when the court is not put on notice of a competency issue, then it does not have cause to vary the extensive litany at the change of plea hearing.

CIVIL 12-1687 (DRD)                    23
(CRIMINAL 09-0351 (DRD))

Furthermore,  "[w]hen a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." Lefkowitz v. Newsome, 420 U.S. 283, 288 (1975) (quoting Tollett v. Henderson, 411 U.S. 258, 267 (1973)); see Nieves-Ramos v. United States, 430 F. Supp. 2d at 43; Caraballo Terán v. United States, 975 F. Supp. 129, 134 (D.P.R. 1997).  A review of the change of plea transcript and sentencing hearing transcripts , as well as other information in the record does not reveal  that the court had reasonable cause to hold a mental competency hearing *sua sponte*.  Defense counsel, clearly over an abundance of caution, sought a comprehensive mental examination of petitioner prior to sentencing, the results of which did not reflect mental incompetency. During the change of plea colloquy, defense counsel assured the court that the defendant was aware of the nature of the proceedings.  Courts are allowed to rely on the representations of defendants as well as their attorneys, in making determinations of voluntariness and knowledge. See  Figueroa-Vazquez v. United States, 718 F.2d 511, 512-13 (1st Cir. 1983).  This case is not excluded from the garden variety of defendants suffering from a mental condition which is part of the process, indeed probably caused by the process.  See e.g. United States v. Lebron, 76 F.3d 29, 33 (1st Cir. 1996).

CIVIL 12-1687 (DRD)                    24
(CRIMINAL 09-0351 (DRD))

It is well settled that a court "will not permit a defendant to turn his back on his own representations to the court merely because it would suit his convenience to do so." United States v. Parrilla-Tirado, 22 F.3d 368, 373 (1st Cir. 1994) (quoting United States v. Pellerito, 878 F.2d 1535, 1539 (1st Cir. 1989)).  "[I]t is the policy of the law to hold litigants to their assurances at a plea colloquy." Torres-Quiles v. United States, 379 F. Supp. 2d 241, 248-49 (D.P.R. 2005) (citing United States v. Marrero-Rivera, 124 F.3d 342, 349 (1st Cir. 1997)).  Thus, the petitioner "should not be heard to controvert his Rule 11 statements . . . unless he [has] offer[ed] a valid reason why he should be permitted to depart from the apparent truth of his earlier statement[s]." United States v. Butt, 731 F.2d 75, 80 (1st Cir. 1984).  "[T]he presumption of truthfulness of the Rule 11 statements will not be overcome unless the allegations in the § 2255 motion are sufficient to state a claim of ineffective assistance of counsel and include credible, valid reasons why a departure from those earlier contradictory statements is now justified." United States v. Butt, 731 F.2d at 80 (citing Crawford v. United States, 519 F.2d 347, 350 (4th Cir. 1975)).  Those reasons are not presented here.

C.  MAJOR DEPRESSION, SEVERE

Petitioner argues that the court's inquiry fell short in accordance with circuit case law, relying on United States v. Parra-Ibanez, 936 F.2d at 595-96.   Key in the court's inquiry is knowing the side effects of the medication petitioner was

CIVIL 12-1687 (DRD)                    25
(CRIMINAL 09-0351 (DRD))

taking at the time of change of plea.  It is telling that this articulate petitioner

informed the court of the side effects of the medication he was taking.

The court inquired:

> We are talking about precisely the medicine that you are
> undertaking.  I asked, if relating to that medicines that you are
> taking today, are you feeling drowsy? Are you feeling sleepy?  Do
> you understand that you cannot concentrate, or to the contrary, do
> you think that you are understanding what's going on and that
> medicine is not affecting you.  So you tell me what the situation is.

(Crim No. 09-351, Docket No. 81 at 6).

The court made further inquiry and petitioner responded.  See infra at pp.

15-17. This is not a case of the ingestion of exaggerated amounts of controlled

substances before a court appearance.  This defendant can be considered atypical

in terms of intelligence and formal education.  Petitioner was sufficiently functional

to be employed at MDC pending sentence.  There is no doubt that an indictment

such as the one petitioner was subjected to, causes situational depression.  See

e.g.  United States v. Maldonado-Montalvo, 356 F.3d 65, 74-75  (1st. Cir. 2003);

United States v. Savinon-Acosta, 232 F.3d 265, 268 (1st Cir. 2000)[9]. This does not

mean that the court must obtain expert testimony to inform it of the adverse

effects of the medications taken alone or in combination every time a non-

_____

[9]The proceedings in petitioner's case are more analogous to those in
Savinon-Acosta than those in Parra-Ibanez.

CIVIL 12-1687 (DRD)                    26
(CRIMINAL 09-0351 (DRD))

symptomatic defendant appears in court having ingested prescribed medications, thus the ability of the court to rely on sources readily available and relevant, such as its own observations and that of counsel, as well as the representations of defendants and their attorneys.

### D.   WITHDRAWAL OF GUILTY PLEA

Petitioner notes that the issue of voluntariness of his plea was not raised on appeal because he was unable to raise an issue not before the district court. (Docket No. 1 at 4).   He also notes that this is the first opportunity under federal law to present the issue.   (Docket No. 1 at 5).   The problem with this wholly simplistic and myopic argument is that it comes from an intelligent, severely depressed (but without psychosis), well-educated person who could have warned the district court that his plea was neither knowingly nor voluntarily entered. See e.g. Cody v. United States, 249 F.3d 47 at  51.  Of course, such a warning would not necessarily have been done at the change of plea proceeding but certainly could have been done within ten months thenceforth.   He could have also warned the court of appeals.   Indeed, petitioner has an IQ of 115, placing him at the 84th percentile, or within the High Average Range. (Crim. 09-351, Docket No. 67 at 22).   There is barely a Sixth Amendment attack on his attorney's conduct, but rather on the conduct of the sentencing court in not inquiring further into petitioner's mental state.   In short, although over ten months passed between the

CIVIL 12-1687 (DRD)                    27
(CRIMINAL 09-0351 (DRD))

guilty plea and the sentencing, no motion to withdraw plea was filed.  Of course,

petitioner would counter his inability to file such a motion with his severe

depression and forgetfulness.   His being under the influence of mind-altering

drugs makes it clear to him that an evidentiary hearing is needed so that he can

prepare an adequate record for appellate review (appearing as though any

proceeding before the district court would be a formality).   (Docket No. 15 at 5).

It is also clear  that such a review could have been undertaken previously but was

not,  and the district court could have been put in the position to consider his

argument during a ten-month period, and was not.   That ten-month period

included petitioner's being able to engage in employment at MDC pending

sentence.

     Petitioner could have raised the issue of voluntariness of the plea because

of the effect of drugs he was taking regardless of having ignored it at the district

court level and review of the plea would have been accepted under the plain error

doctrine since it would have been unpreserved.   See United States v. Savinon-

Acosta, 232 F.3d at 268.  Indeed, the circuit has recently noted:

> The interest of finality, always important in criminal cases, is of
> heightened concern when a conviction arises from a guilty plea. See
> Bousely v. United States, 523 U.S. 614, 621, . . .(1998); Blackledge
> v. Allison, 431 U.S. 63, 71-72, . . .(1977).  While constitutional
> questions about whether the plea was knowing and intelligent may be
> susceptible to review, see United States v. Jimenez, 512 F.3d 1, 3-4
> (1st Cir. 2007); United States v. Gandia-Jimenez, 227 F.3d 1, 3 (1st

CIVIL 12-1687 (DRD)                    28
(CRIMINAL 09-0351 (DRD))

Cir. 2000), even those questions, if not raised below, are subject only to plain-error review. See Jimenez, 512 F.3d at 3-4. Such review is largely a matter of discretion.  See United States v. Olano, 507 U.S. 725, 735-36 . . .(1993); United States v. Kinsella, 622 F.3d 75, 83 (1st Cir. 2010).

United States v. George, 676 F.3d 249, 257 (1st Cir. 2012).

As petitioner notes, the court has a duty to inquire into a defendant's capacity to plea when he is taking medication, and the better practice would be to identify which drugs a defendant is taking, how recently they have been taken and in what quantity, along with the consequences of taking such drugs. See United States v. Savinon-Acosta, 232 F.3d at 268, citing Miranda-Gonzalez v. United States, 181 F.3d 164, 166 (1st Cir. 1999); United States v. Parra-Ibanez, 936 F.2d at 595-96.  Nevertheless, it is also clear, as petitioner has noted in part, that

> [j]udges are not pharmacists or doctors.  Occasionally the aid of an expert may be necessary to explain the likely or actual effects of a particular drug.  However, practical judgments can usually be made. Courts have commonly relied on the defendant's own assurance (and assurances from counsel) that the defendant's mind is clear.  Further, the defendant's own performance in the course of a colloquy may confirm, or occasionally undermine, his assurances.  Conversely, a defendant's prior medical history or behavior may call for heightened vigilance.

United States v. Savinon-Acosta, 232 F.3d at 268-69, quoted in United States v. Morrisette, 429 F.3d 318, 322 (1st Cir. 2005)

Petitioner's own statements during the plea colloquy confirmed his own assurances as to voluntariness and knowledge, and the prior medical history, while

CIVIL 12-1687 (DRD)                      29
(CRIMINAL 09-0351 (DRD))

possibly giving cause to pause, contributed little else.  Petitioner confirmed that he mostly understood the English language, and that he understood the plea agreement because it had been fully translated to him.  The court noted, "I think you are understanding each question and expressing and answering directly related to the question asked." (Crim. No. 09-351 (DRD), Docket No. 81 at 29).

### E. CONSPIRACY: MOCKERY OF JUSTICE

Petitioner adds a serious postscript to his argument in accusing defense counsel of clearly acting in prosecutor mode.  He continues the accusation relating that with two prosecutors acting in concert with each other in a case where he was incompetent, the proceedings amounted to a mockery of justice.  I have reviewed the record for any evidence or inkling of conspiracy theory.  There is none. If anything, the contrary is true.  By his own words, petitioner was 95% satisfied with counsel and met with her at least nine times to discuss plea negotiations. Ninety-five percent is at least an "A" in most elementary grading systems.  When the case was first set for change of plea on May 17, 2010, defense counsel asked for additional time for petitioner to decide whether to accept or reject the proposed plea agreement. (Crim. No. 09-351 (DRD), Docket No. 39).  The Assistant Federal Public Defender also informed the court that there might be a grievance from petitioner about his legal representation.  Upon inquiry, petitioner stated his satisfaction with the services provided by his attorney, AFPD Irizarry.  A review

CIVIL 12-1687 (DRD)                    30
(CRIMINAL 09-0351 (DRD))

of this record reveals that the patently vigorous defense stands at loggerheads

with the opaque accusation.   In any event, petitioner's argument is undeveloped

and conclusory.   It is a settled rule that "issues adverted to in a perfunctory

manner, unaccompanied by some effort at developed argumentation, are deemed

waived." Nikijuluw v. Gonzales, 427 F.3d 115, 120 n.3 (1st Cir. 2005);   United

States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990); Casas v. United States, 576

F.Supp. 2d 226, 234 (D.P.R. 2008);   Vega-Figueroa v. United States, 206 F.R.D.

524, 524 (D.P.R. 2002).    The argument of conspiracy theory lacks any plausible

foundation, and is at best an ill-deserved, poorly conceived parting shot to defense

counsel.

## F.  PROCEDURAL DEFAULT

Finally, I address the seminal redoubt which petitioner's plea is facing, that

is, procedural default, a subject touched upon above.

> A significant bar on habeas corpus relief is imposed when a prisoner
> did not raise claims at trial or on direct review.  In such cases, a court
> may hear those claims for the first time on habeas corpus review only
> if the petitioner has "cause" for having procedurally defaulted his
> claims, and if the petitioner suffered "actual prejudice" from the error
> of which he complains.

United States v. Sampson, 820 F. Supp.2d 202, 220 (D.Mass. 2011), citing

Owens v. United States, 483 F.3d 48, 56 (1st Cir. 2007), also citing Oakes v.

United States, 400 F.3d 92, 95 (1st Cir. 2005) ("If a federal habeas petitioner

CIVIL 12-1687 (DRD)                          31
(CRIMINAL 09-0351 (DRD))

challenges his conviction or sentence on a ground that he did not advance on

direct appeal, his claim is deemed procedurally defaulted."   To obtain collateral

relief in this case, petitioner must show cause excusing his double procedural

default and actual prejudice resulting from the errors he is complaining about.

See United States v. Frady, 456 U.S. 152, 167-68 (1982).   Ineffective assistance

of counsel can clearly supply the cause element of the cause and prejudice

standard.   See Murray v. Carrier, 477 U.S. 478, 488 (1986), cited in Bucci v.

United States, 662 F.3d 18, 29 (1st. Cir. 2011).   However, petitioner has failed to

show that defense counsel's representation was constitutionally ineffective under

the Strickland standard.  As to the mental competency issue, defense counsel was

hardly put on notice that there existed such an issue, and the record reflects that

petitioner's well-being was a matter of concern to her. (Crim. No. 09-351 (DRD),

Docket No. 82).   Indeed, defense counsel made reference to the companion case

in local court, where petitioner was pending a change of plea and sentence. (Crim.

No. 09-351, Docket No. 82 at 24).    The same lack of notice holds true for

appellate counsel.   The sentencing court noted the involvement of a computer to

solicit participation with a minor in sexually explicit conduct, thus a two level

guideline increase.  Defense counsel started arguing about  the two points related

to the computer but the court cut her off and assured her that it would not be

used, that if it had been used, the guideline sentencing range would have been

CIVIL 12-1687 (DRD)                    32
(CRIMINAL 09-0351 (DRD))

168 to 210 months. (Crim. No. 09-351 (DRD), Docket No. 82 at 42).  Counsel did

not press the point.  The court of appeals made reference to counsel's attempt

and the court's failure to apply  U.S.S.G. § 2G2.1(b)(6)(B)(ii).   In relation to the

actions of defense counsel, the court noted, "The most that counsel might have

done  here  would  have  resulted  in  substituting  "(I)"  for  "(ii)"  in  a  corrected

presentence report.  In any event, petitioner's argument now suffers from double

procedural default, that is, failure to argue competency and move to withdraw his

plea at the trial level, and failure to argue competency before the court of appeals.

See United States v. Frady, 456 U.S. at 167-68.   It is hornbook law that ". . .the

voluntariness and intelligence of a guilty plea can be attacked on collateral review

only  if  first  challenged  on  direct  review.   Habeas  review  is  an  extraordinary

remedy[10] and 'will not be allowed to do service for an appeal.'" Bousely v. United

States, 523 U.S. at 621.  Indeed, the sentencing court informed him that he could

appeal the conviction if he believed that the guilty plea was somehow unlawful or

involuntary or if there was some other fundamental defect in the proceedings that

_____

[10]The universality of the extraordinary nature of the writ should not be lost
upon by the court. See Antonio R. Bautista, *Habeas Corpus as a Post-Conviction
Remedy*, Vol. 75 Philippine L. J. 553, 564-55 (2001); Cristina Fuertes-Planas
Aleix, *Habeas Corpus*, No. 4 Rev. Elec. de Metodología e Historia del Derecho
(www.ucm.es/info/kinesis/habeas20%corpus.htm) (Universidad Complutense de
Madrid,2007); Humberto Nogueira Alcala, *El Habeas Corpus o Recurso de Amparo
en Chile*, No. 102 Rev. De Estudios Politicos (Nueva Epoca) 193, 203 (Oct.-Dec.
1998); H.F. Rawlings, *Habeas Corpus and Preventive Detention in Singapore and
Malaysia*, Vol. 25 Malaya L. Rev. 324-350 (1983).

CIVIL 12-1687 (DRD)                    33
(CRIMINAL 09-0351 (DRD))

was not waived by the guilty plea. (Crim. No. 09-351 (DRD), Docket No. 82 at 36).

The court stressed the point and informed petitioner that he had a statutory right

to appeal since it had not followed the recommendation in the plea agreement.

IV. CONCLUSION

Petitioner has not satisfied the first prong of Strickland.  The arguably

inadequate and poor performance of his attorney in relation to the enhancement

issue did not contribute to the ultimate outcome of the criminal case.  There were

no errors of defense counsel that resulted in a violation of petitioner's right to

adequate representation of counsel under the Sixth Amendment.    Lafler v.

Cooper, 132 S.Ct. 1376, 1384 (Mar. 21, 2012); Strickland v. Washington, 466

U.S. at 686-87; Moreno-Espada v, United States, 666 F.3d 60, 65 (1ˢᵗ Cir. 2012);

United States v. Downs-Moses, 329 F.3d 253, 265 (1st Cir. 2003).    But even

assuming that the actions of defense counsel fell below an objective standard of

performance in a Strickland sense, there is no prejudice in any event in relation

to the two level enhancement, and the opinion of the Court of Appeals provides the

basis for such a finding. See Owens v. United States, 483 F.3d at 63 (quoting

Strickland v. Washington, 466 U.S. at 687-88).  Furthermore, The Supreme Court

has narrowly confined the scope and availability of collateral attack for claims that

do not allege constitutional or jurisdictional errors.  Such claims are properly

brought under section 2255 only if the claimed error is "a fundamental defect

CIVIL 12-1687 (DRD)                    34
(CRIMINAL 09-0351 (DRD))

which inherently results in a complete miscarriage of justice" or "an omission inconsistent with the rudimentary demands of fair procedure." Knight v. United States, 37 F.3d at 772 (quoting Hill v. United States, 368 U.S. at 428). The reason for so sharply limiting the availability of collateral attack for nonconstitutional, nonjurisdictional errors is that direct appeal provides criminal defendants with a regular and orderly avenue for correcting such errors. The Supreme Court has repeatedly emphasized that section 2255 is not a substitute for direct appeal. Knight v. United States, 37 F.3d at 772; see also United States v. Frady, 456 U.S. at 165; United States v. Addonizio, 442 U.S. 178, 184-85 (1979). Appealable issues cannot be raised in the context of a section 2255 motion. United States v. Frady, 456 U.S. at 168. In order to raise an otherwise appealable issue in the context of a 2255 motion, a petitioner must show cause as to why the issue was not raised on appeal. See Coleman v. Thompson, 501 U.S. 722, 753 (1991); Bucci v. United States, 662 F.3d at 38 n.20. No such showing of cause has been made in this case.

In view of the above, I recommend that petitioner's motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255 be DENIED without evidentiary hearing.

Under the provisions of Rule 72(d), Local Rules, District of Puerto Rico, any party who objects to this report and recommendation must file a written objection

CIVIL 12-1687 (DRD)                     35
(CRIMINAL 09-0351 (DRD))

thereto with the Clerk of this Court within fourteen (14) days of the party's receipt of this report and recommendation.  The written objections must specifically identify the portion of the recommendation, or report to which objection is made and the basis for such objections.  Failure to comply with this rule precludes further appellate review.  See Thomas v. Arn, 474 U.S. 140, 155 (1985); Davet v. Maccorone, 973 F.2d 22, 30-31 (1st Cir. 1992); Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985 (1st Cir. 1988); Borden v. Sec'y of Health & Human Servs., 836 F.2d 4, 6 (1st Cir. 1987); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603 (1st Cir. 1980).

At San Juan, Puerto Rico, this 26th day of December, 2012.

S/JUSTO ARENAS
United States Magistrate Judge

CIVIL 12-1687 (DRD)                    36
(CRIMINAL 09-0351 (DRD))